

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN, TEXAS 78711**

JOHN L. HILL
ATTORNEY GENERAL

July 27, 1973

The Honorable Herbert C. McKee, Chairman
Texas Air Control Board
820 East 53rd Street
Austin, Texas 78751

Opinion No. H-71

Re: Questions concerning
the application and
constitutionality of
Article 6252-9, V. T. C. S.
(Acts 1957)

Dear Mr. McKee:

You have requested our opinion concerning the application and consti-
tutionality of Article 6252-9, V. T. C. S. (Acts, 1957) and particularly § 3(1)
thereof relating to standards of conduct as that section may apply to members
of the Texas Air Control Board.

Section 2. 02 of Article 4477-2 requires that one of the nine members be
a professional engineer with at least ten years experience in the actual
practice of his profession including work in air control; one shall be a
licensed physician currently engaged in general practice with experience
in the field of industrial medicine; one shall be engaged in the management
of a private manufacturing or industrial concern for at least ten years;
one shall be experienced in the field of municipal government; one shall be
an agricultural engineer with at least ten years in his profession; and the
remaining four shall be chosen from the general public. Board members
receive no salary but do receive $25 for each day in attendance at meetings
or hearings or on authorized business of the Board and reimbursement for
travel and other necessary expenses (§ 2. 05).

You were appointed to the Board in 1966 to fill the space allocated
to the professional engineer with experience in the air pollution field.

You have asked that we answer five specific questions, which are:

"1. Is Section 3(i) of Article 6252-9 (1957 Act) constitutional?

"2. Is Section 3(i) of Article 6252-9 constitutional as applied to members of the Texas Air Control Board serving pursuant to the Texas Clean Air Act (V.A.C.S., Article 4477-5) and proceedings under which these members were appointed by the Executive and confirmed by the Senate?

"3. Can the present members of the Texas Air Control Board continue to serve in this capacity?

"4. If the answer to No. 3 is yes, can such a Board member avoid a substantial conflict within the intent of the Declaration of Policy contained in Section 1 of the 1957 Act if he disqualifies himself on any items of business pertaining to companies or other entities with which he has significant business and/or professional association?

"5. In addition to the procedure specified in No. 4, is any other action required by such a Board member in order to avoid any conflict of interest which would be in violation of the 1957 Act or any other applicable statute?"

Article 6252-9 as enacted in 1957 (Acts 1957, 55th Leg., p. 213, ch. 100) declared the policy of the state in §1 as follows:

"Section 1. It is hereby declared to be the policy of the Legislature that no officer or employee of a state agency, Member of the Legislature or legislative employee should have any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity or incur any ob-

ligation of any nature which is in substantial
conflict with the proper discharge of his
duties in the public interest. To implement
such policy and to strengthen the faith and
confidence of the people of Texas in their
Government, there is herein enacted a code
of ethics setting forth standards of conduct
to be observed by state officers and employ-
ees in the performance of their official duties.
It is in the intent of the Legislature that this
code shall serve not only as a guide for official
conduct of the State's public servants but also
as a basis for discipline of those who refuse to
abide by its terms. "

Section 2 contained definitions. The "Standards of Conduct " of
§ 3 include § 3(i), the primary section giving rise to your inquiries, and
which reads as follows:

"(i) No officer or employee of a state
agency nor any firm, association, corporation
or other business entity in which he is a mem-
ber, agent, or officer, or in which he owns a
controlling interest, shall sell goods or services
to any person, firm, association, or corporation
which is licensed by or regulated in any manner
by the state agency in which such officer or em-
ployee serves. "

Section 4 provided that the failure of any officer or employee of a State
agency, etc., to comply with the standards which apply to him "shall
constitute grounds for expulsion, removal from office, or discharge,
whichever is applicable. "

In 1971 the 62nd Legislature attempted to amend Article 6252-9 by
adopting the so-called 1971 Ethics Bill (Acts 1971, 62nd Leg., Regular Session,
Ch. 962, p. 2906). Its statement of policy was the same. It had, in its § 4,
standards of conduct, and had a similar provision that failure to comply
would constitute grounds for expulsion, removal from office, or discharge.
It went further in that it required financial statements of certain State officers

and employees, called for the creation of a State Ethics Commission, etc. However, the 1971 Act was declared unconstitutional by the opinion of this office in Attorney General's Opinion M-1039 (1972) which in part was in answer to questions from your office. Having held the 1971 Act unconstitutional, the opinion looked to the 1957 Act, and particularly § 3(i), upheld the constitutionality of that section, and stated that whether members of the Air Control Board may have dealings with companies regulated by the Board "must first be determined by the employing State agency . . . ."

Finally, the 63rd Legislature, in House Bill No. 1, effective January 1, 1974, repealed the 1957 Act and enacted the 1973 Ethics Code. It contains the same declaration of policy. Pertinent to your questions is § 6 which provides in subsection (a):

> "This section applies only to an elected or appointed officer who is a member of a Board or a Commission having policy direction over a state agency, excluding officers subject to impeachment under Article XIV, § 2 of the Texas Constitution. If such an officer has a personal or private interest in any measure, proposal, or decision pending before the Board or Commission, he shall publicly disclose the fact to the Board or Commission in a meeting called and held in compliance with the Open Meetings Law (Art. 6252-17, Vernon's Texas Civil Statutes) and shall not vote or otherwise participate in the decision. The disclosure shall be entered in the minutes of the meeting."

The remaining subsections of § 6 contain definitions and provisions for removal in the event the required disclosure is not made.

Section 8 of the 1973 Bill contains its "standards of conduct" which are fewer in number than in either the 1957 or 1971 Acts. Pertinent to your inquiry are subsections b, c and e which are as follows:

> "(b) No state officer or state employee should accept employment or engage in any business or

professional activity which he might reasonably
expect would require or induce him to disclose
confidential information acquired by reason of his
official position.

"(c) No state officer or state employee should
accept other employment or compensation which
could reasonably be expected to impair his indepen-
dence of judgment in the performance of his official
duties.

"(e) No state officer or state employee should
intentionally or knowingly solicit, accept, or agree
to accept any benefit for having exercised his
official powers or performed his official duties
in favor of another. "

No penalty is provided in the 1973 Act for violation of the standards of conduct.

The authority of the Legislature of the State of Texas is plenary.
Government Services Insurance Underwriters v. Jones, 368 S. W. 2d 560
(Tex. 1963). It may enact any law which is not prohibited either by the
Constitution of the State or of the United States. Shepherd v. San Jacinto
Junior College District, 363 S. W. 2d 742 (Tex. 1962); Oser v. Cullen, 435
S. W. 2d 896 (Tex. Civ. App. , Houston, 1969). Undoubtedly it has the power
to determine the public policy of the State and to set standards of conduct
for governmental officials so long as those standards do not inhibit the
performance of any constitutional duties. As we said in Attorney General
Opinion H-15(1973) dealing with House Bill 1 of the 63rd Legislature as
originally proposed:

"In setting standards with which all persons
entrusted with public responsibility must comply,
the Legislature does not encroach upon the consti-
tutional prerogatives of the other branches of the
government; it acts in their aid, as well as its
own, to promote public confidence in the integrity
of all branches of the government.

> "So long as the Legislature does not interfere
> with the discharge by the other branches of their
> constitutional duties no constitutional problem
> results. State Board of Insurance v. Betts, supra
> [308 S.W.2d 846 (Tex. 1958)]. Requiring ethical
> deportment uniformly required of all other public
> servants can be no unwarranted burden. Nor can
> requiring disclosure of relevant financial matters
> be condemned out of hand. And, it has always been
> a legislative function to define crimes and set punish-
> ments." (p. 65)

Neither the 1957 nor the 1973 ethics law purports to deal with qualifications for office. It is not unusual for acts creating regulatory boards to require as a qualification for board membership, qualifications which potentially involve conflicts of interest. For instance, the Texas Cosmetology Commission (Article 734c, Vernon's Texas Penal Code); the State Board of Barber Examiners (Article 734a, § 26, Vernon's Texas Penal Code); the Texas Optometry Board (Article 4552-2.01, Vernon's Texas Civil Statutes) and numerable others. Potential conflicts of interest do not disqualify persons from membership. See our Letter Advisory No. 13 (1973) with reference to the membership of tenants as commissioners of a housing authority.

Our answers to your specific questions therefore are as follows:

(1) Sec. 3(i) of Art. 6252-9, the 1957 Act, is constitutional as a proper legislative regulation of the conduct of public officers.

(2) Since § 3(i) of Article 6252-9 governs the conduct of officials after their appointment, it does not conflict in any way with statutes determining the qualifications of those to be appointed such as Article 4477-5, Vernon's Texas Civil Statutes, prescribing the qualifications of members of the Texas Air Control Board.

(3) The present members of the Texas Air Control Board can continue to serve in that capacity unless it is demonstrated that they have exceeded the proper bounds prescribed by Article 6252-9 in any of its versions or any other statute or common law rule governing the proper conduct of public officers. Although the 1957 Act said that violation of its standards

of conduct would constitute grounds for removal from office, nevertheless it  provided no machinery for removal.  Removal would have to be in accordance with Article 15 of the Constitution, "Impeachment," and Title 100 of Vernon's Texas Civil Statutes entitled "Officers - Removal Of."

House Bill 1 of the 63rd Legislature, which will be effective on January 1, 1974, provides for sanctions only in the event an officer fails to publicly disclose a personal or private interest and provides no sanctions for failing to abide by the standards of conduct.

Our answer to your third question therefore is that the members of the Texas Air Control Board, whatever the circumstances are, may continue to serve in their present capacities until their terms expire, they retire, or they are removed in some statutory manner.

In answer to your fourth and fifth questions, we do not believe that the standards of conduct set out in the 1957 Act can be totally satisfied merely by a board member disqualifying himself on items of business "pertaining to companies or other entities with which he has significant business and/or professional association." For instance, and despite the liberalization of § 3(i) by Attorney General Opinion M-1069, where an officer of a state agency is at the same time an officer, agent, or member of or owns a controlling interest in another business entity, under the 1957 Act he and such business entity are prohibited from selling goods or services to another person, firm or corporation licensed or regulated by the agency.

We understand, for example that your request for our opinion was prompted in part by adverse criticism growing out of a contract between a corporation subject to the jurisdiction of the Texas Air Control Board and Southwest Research Institute, of which you are a director.  On its face, such a contract would not comport with the standards of conduct set out in § 3(i) of the 1957 Act.  This is not to say, however, that such fact automatically presents a conflict o interest contrary to the public policy pronounced by the Legislature and prohibited by the Act.  Nor do we determine that it should result in removal from office.  As Attorney General Opinion M-1039 held there may be circumstances under which a literal interpretation of § 3(i) would defeat the legislative intent and that the section would not be given such an application.  In our opinion the finding of these facts in any given case and the application of the law to them to determine whether there is such a conflict of interests as to warrant

action are matters for those charged with enforcement of the ethics legislation, i. e., the heads of agencies and district attorneys in the first instance and the Legislature or the courts if removal from office is to be sought. It would be inconsistent with the constitutionally guaranteed rights were we to make those determinations in the process of writing opinions.

Under the new Ethics law which becomes effective on January 1, 1974, the propriety of such a contract would depend on whether or not it might reasonably be expected to require or induce you to disclose confidential information acquired by reason of your official position or would be reasonably expected to impair your independence of judgment in the performance of your official duties or was a benefit conferred for your having exercised your official powers or duties in favor of another.

### S U M M A R Y

Article 6252-9 as enacted in 1957 and as later amended does not govern the qualification of persons for office. Members of the Texas Air Control Board are qualified for office if they meet the requirements of Article 4477-5, Vernon's Texas Civil Statutes. Their conduct in office is to be governed, until January 1, 1974, in part, by Article 6252-9, and thereafter by applicable portions of the 1973 Ethics Bill, and they may be subject to removal under appropriate procedures in the event they violate the provisions of that Article.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman    p. 314
Opinion Committee